EDMUND SANTOS *vs.* DOREEN L. SANTOS.

JULY 30, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This is a petition by a husband for an absolute divorce alleging that the respondent wife was guilty of extreme cruelty, of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant, and also that the marriage was originally void or voidable.   The case was heard by a justice of the superior court where notwithstanding personal service on respondent the case was unanswered and uncontested by her.   At the conclusion of all the evidence for petitioner the trial justice rendered a decision denying and dismissing the petition on all grounds, and the case is before us on petitioner's bill of exceptions to such decision.

The evidence shows that petitioner was nineteen years of

age and a lifelong resident of Bristol, Rhode Island; that he met respondent in this state and after about a month's acquaintance went to Utica, New York, where they were married on May 5, 1951; and that the parties returned immediately to live in Bristol at the home of petitioner's mother.

The petitioner testified that through no fault of his the marriage was never consummated; that on the day of marriage respondent refused to have normal sexual intercourse and wanted to engage only in unnatural intercourse; that believing her to be ill he took her to a Dr. Clark, who after examining respondent advised petitioner it would be better to obtain a divorce; and that after three days without consummation of the marriage or change in respondent's attitude she wilfully left him and went to live with a girl friend of questionable reputation.

There was general testimony that "everybody else knows" the doubtful reputation of respondent and the girl with whom she had lived before her marriage, and also of another girl with whom she lived after leaving petitioner. While that testimony was mere hearsay it was introduced without objection and is not inconsistent with evidence of petitioner relating to respondent's conduct. Apparently she made no admissions as to any facts relating to the period prior to the marriage, but after she left petitioner she told his sister-in-law, who testified, that she felt it was best for him to get his divorce.

The petitioner further testified that the father of one of the girls with whom respondent had preferred to live was willing to testify concerning the conduct and reputation of respondent and of his own daughter, but he was not called as a witness. There is also testimony concerning a letter which apparently was written by respondent in which she professed and preferred love for one of these girl friends.

The trial justice found on this meager testimony that petitioner had not presented sufficient evidence of extreme cruelty. From our examination of the transcript we agree

with that conclusion. While extreme cruelty may be established without necessarily showing physical force or battery, nevertheless the evidence must establish conduct or acts of cruelty which were intentional and resulted in an impairment of the bodily or mental health of the injured party, or at least would inevitably lead to such injury to that party's health. *Jackson* v. *Jackson,* 70 R. I. 333; *Bastien* v. *Bastien,* 57 R. I. 176; *McKeon* v. *McKeon,* 54 R. I. 163. We find no such evidence in the instant case and therefore the trial justice ruled correctly on that ground.

The second ground alleges that respondent had been guilty of "gross misbehavior and wickedness, repugnant to and in violation of the marriage covenant, in that she has illicitly associated with other women * * *." As the trial justice observed, the case is unusual in that such a charge ordinarily involves reprehensible conduct of a party with a member of the opposite sex. However, on the basis that conceivably facts might be shown to constitute licentious conduct akin in morals to adultery, the trial justice assumed that petitioner had the right to a divorce if he could support this ground with legal evidence. But he found that petitioner had presented only testimony creating a suspicion in place of proper and competent evidence of facts from which such licentious and immoral conduct could be inferred. Therefore he denied the petition on that ground.

No case has been presented by petitioner and we have found none in which that ground has been held to include a relationship between a respondent wife and another person of her own sex of the kind apparently suspected or indicated in the instant case. However, we have held that this ground, under G. L. 1938, chap. 416, §2, should be interpreted in the light of the preceding grounds enumerated in that chapter; and that to support such ground the conduct must be shown to have some character of licentiousness or brutality allying it in its moral attributes with adultery or extreme cruelty. *Walker* v. *Walker,* 38 R. I. 362; *Rainey* v. *Rainey,* 57 R. I. 426. Therefore assuming, as did the trial justice,

that this ground under the statute conceivably may contemplate the kind of conduct that was suspected, we cannot say that the trial justice was clearly wrong in holding in effect that such necessary fact had not been established by the same convincing evidence as is required in the case of other grounds in divorce proceedings. In our opinion the trial justice was not clearly wrong in denying the petition on that ground.

The final ground alleged by petitioner is that the marriage was originally void or voidable under G. L. 1938, chap. 416, §1. The trial justice expressed his view that the question whether this marriage was void or voidable depended on mere failure of consummation. Following what he terms a generally accepted rule at common law, he held that "lack of consummation of marriage in and of itself doesn't make the marriage voidable or invalid" and therefore he denied the petition on that ground.

There appears to be authority at common law for the rule as stated by the trial justice *if* the petitioner relies on lack of consummation *in and of itself*. But in our judgment he either misconceived the petitioner's claim or failed to give to the uncontradicted positive evidence the value to which it was entitled in the peculiar circumstances that appear of record. The petitioner here was not claiming that a mere failure of consummation *in and of itself* entitled him to a divorce, as the trial justice indicated. In our judgment his contention under this ground is that respondent's failure to consummate the marriage, together with other evidence as to her conduct which was wholly repugnant to and destructive of the marriage covenant, was such as to amount to a fraudulent concealment from the beginning of essential facts, thus preventing the contract from ever having any valid existence.

In this connection, as in certain others, the case is unusual and also has special and peculiar circumstances. The testimony of the petitioner is frank, explicit, and contains

no inherent improbabilities or inconsistencies. Such testimony is nowhere contradicted or explained by respondent, who did not appear, nor by any other facts in the record. There is no evidence or even a suggestion of fraud or collusion on the part of petitioner, and the trial justice did not base his decision on any lack of his credibility. In these circumstances his positive testimony, together with reasonable inferences therefrom, was entitled to be followed. See *Enterprise Garnetting Co.* v. *Forcier,* 67 R. I. 336; *Burr* v. *Fall River News Co.,* 75 R. I. 476, 480.

The trial justice, however, apparently misconceived or overlooked some of this evidence, or at least he failed to evaluate it and to give petitioner the benefit of the reasonable inferences therefrom. The petitioner's testimony shows more than a mere lack of consummation. It also establishes in substance and effect that from the beginning respondent wilfully, without reason, and without any fault on petitioner's part refused to consummate the marriage; that on the very day of marriage she not only refused to engage in normal sexual intercourse but insisted upon unnatural intercourse which he refused; that believing respondent to be ill petitioner took her to a doctor; and that after the latter's examination and without any explanation from him or her that there was a physical impediment, disability, or other condition to indicate that consummation of the marriage might be impossible, temporarily or permanently, or would endanger respondent's health, she persisted in refusing to consummate the marriage. Finally after three days, without ever consummating the marriage and without petitioner's fault, she left him permanently to associate with a girl friend of questionable reputation, for whose love she professed a preference.

The general rule is well established, apart from cases under the workmen's compensation statute, that this court may draw its own inferences from undisputed and uncontradicted evidence. See *Correia* v. *McCormick,* 51 R. I.

301; *St. Goddard* v. *Potter & Johnson Machine Co.,* 69 R. I. 90; *Wilson* v. *Ollman,* 74 R. I. 358. In the absence of contradiction or explanation, we think the above-mentioned evidence, which was not inherently improbable or inconsistent, and the fair inferences therefrom lead to only one reasonable conclusion. It establishes that respondent had no intent from the beginning to consummate the marriage, to engage in normal sexual intercourse, or to live up to the marriage covenant. It further shows that before and at the time of the formal ceremony she knowingly and deliberately concealed from petitioner her intent not to consummate the marriage and her design to engage only in abnormal conduct that was repugnant to and destructive of the basic purpose and terms of the marriage covenant.

We can think of no possible reason or excuse for respondent's concealment of this vital fact. Nor can we believe that such a repugnant intent could come into existence merely after a ceremony entered into with good faith and that it did not exist before the marriage was contracted and solemnized. On the contrary it seems to us that the only reasonable inference from the uncontradicted and unexplained evidence of her own conduct on the very day of the marriage and continuously thereafter is that from the beginning she had not intended to enter into a true marriage; that she had a contrary intent; and that she had fraudulently concealed it in circumstances that were destructive of any mutuality and were repugnant to the existence, terms and obligations of a valid marriage contract.

In such circumstances we are not dealing with a case of physical impediment or condition making consummation impossible or dangerous to respondent's health. Nor is it a question of ordinary fraud and concealment with reference to some mere incidental matter, or of a condition that came into existence or became known to both parties only after the marriage was contracted in good faith. Here the question goes to the root of the existence of a valid marriage contract

and status. In effect respondent from the beginning by her own fraudulent concealment of her intent not to consummate the marriage and by her conduct which at all times was repugnant to a proper consummation thereof, made it impossible for her to contract a marriage in good faith, destroyed in fact any possibility of mutuality, and therefore prevented a valid contract and marriage from ever coming into existence. For these reasons we are of the opinion that the trial justice erred in not granting the petition on the ground that the marriage was originally void under the statute.

The petitioner's exception is sustained, and the case is remitted to the superior court for entry of a decree granting the petition on the ground of an originally void marriage.

*Raymond A. Thomas,* for petitioner.

Respondent not represented.